## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MANAL ALEISA, *et al.*, | ) | Case No. 5:20-cv-2383 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Kathleen B. Burke |
| | ) | |
| GOJO INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MAGDIELA GONZALEZ, *et al.*, | ) | Case No. 5:20-cv-2448 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Kathleen B. Burke |
| | ) | |
| GOJO INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs, consumers in various States who purchased Purell hand sanitizer in New York and California, bring this putative class action against the product's manufacturer.  Plaintiffs do not pursue product liability claims and do not allege personal injury.  Instead, Plaintiffs frame their complaint in terms of violations of State marketing and consumer protection laws.  But attempts to re-define or re-characterize otherwise deficient product liability claims in this way risk failure to allege an injury within the meaning of Article III.  Such is the case here.

Basing their causes of action on what they claim is false and misleading advertising touting the product as effective at killing 99.99% of germs, Plaintiffs

claim they would not have bought the product at all—and certainly not at the price they paid for it.  But these claims, on the facts alleged, do not state an injury that gives Plaintiffs standing to pursue such a case.  Indeed, on the face of the consolidated amended complaint, Plaintiffs attempt to proceed on the basis of facts and representations having nothing to do with the product they purchased.  Instead, they rely on regulatory action involving a different product that has, at best, a remote connection to the causes of action they assert or the injury they claim here.

Article III requires a concrete injury.  Even taking the allegations as true, the consolidated amended complaint fails to establish Plaintiffs suffered any injury entitling them to maintain this lawsuit.  Plaintiffs' efforts to transform meritless product liability claims into a consumer class action, and to take advantage of adverse publicity attending a product related to the one at issue, fail under basic standing principles.  For these reasons, as more fully explained below, the Court **GRANTS** Defendant's motion to dismiss under Rule 12(b)(1).

## STATEMENT OF FACTS

Taking the facts alleged in the consolidated amended complaint as true and construing them in Plaintiffs' favor, Plaintiffs base their claims in this putative class action on the following facts.

### A.    The Parties

Defendant GOJO Industries, Inc. manufactures and distributes various products, including hand sanitizers.  (ECF No. 84, ¶ 29, PageID #189.[1])

---

[1] Because these cases are consolidated, the same filings may appear on the dockets of each with different numbers.  For the sake of clarity, all citations in this

Plaintiffs are consumers who purchased Defendant's hand sanitizer products in California and New York.  (*Id.*, ¶ 1, PageID #185.)  Of the seven named plaintiffs, five sued in California, and two in New York.  (*Id.*)

### B.    The Products and Representations at Issue

According to the consolidated amended complaint, Plaintiffs each purchased Purell Advanced Hand Sanitizer in one form or another.  (*Id.*, ¶ 3, PageID #186; ¶¶ 53, 57, 60, 61, 64, 67, 68, 69, 73 & 79, PageID #201–04.)  Further, Plaintiffs define the products at issue "as including all ethanol-based hand sanitizers manufactured, advertised, marketed, packaged, or sold by Defendant."  (*Id.*, ¶ 3 n.1, PageID #186.)

GOJO markets these products with the following statements in various channels, including websites, social media, television, and on the products' labels:

- On a page on its website about cold and flu season:  "Everyday hand hygiene, both handwashing and hand sanitizing with an alcohol-based hand sanitizer is the single most important way to reduce the spread of germs."  (*Id.*, ¶ 33.f., PageID #191; ECF No. 84-2, PageID #236.)

- On a GOJO blog page titled "Don't Let the Flu Slow Down Your Office": "Hand hygiene—handwashing with soap and water or using an alcohol-based hand sanitizer with at least 60% alcohol when soap and water are not available—is one of the most important measures we can all take to reduce the spread of illness-causing germs.  Making hand hygiene products, such as hand sanitizing wipes and alcohol-based hand sanitizer, available is a great way to promote hand hygiene practices throughout the office."  (ECF No 84, ¶ 33.g., PageID #191–92; ECF No. 84-2, PageID #241.)

- On its Facebook page:  "The PURELL SOLUTION™ has the products you need to help prevent the spread of infection this germ season.  Visit GOJO.com for more information."  (ECF No. 84, ¶ 33.m., PageID #193.)

---

ruling reference the docket in *Aleisa*, No. 5:20-cv-2383, which is the lead case and the case with the lower number.

Beyond these allegedly false and misleading statements, Plaintiffs who sued in California acquired the following products based on the following representations:

| Plaintiff | Product | Relied On | Source (ECF No. 84) |
|---|---|---|---|
| Manal Aleisa | Purell Advanced Hand Sanitizer | Label:  "Kills more than 99.99% of Germs"<br><br>Purell Facebook Page:  "prevents disease and reduces illness" | ¶¶ 53–56, PageID #201 |
| Gail Sibley | Purell Advanced Hand Sanitizer including Foam, Gel, ES6 Starter Kit<br><br>Purell Advanced Hand Sanitizer | TV ads:  "prevents the flu and other viruses" and "reduces the flu and other viruses"<br><br>Purell online ads (same) | ¶¶ 57–59, PageID #201 |
| Edward Miller | Purell Advanced Hand Sanitizer | "prevents the flu and other viruses" and "reduces the flu and other viruses" | ¶¶ 60–63, PageID #201–02 |
| John Marinovich | Purell Advanced Hand Sanitizer | "the misrepresentations" | ¶¶ 64–66 PageID #202 |
| Cliff Jurkiewicz | Purell Advanced Hand Sanitizer | Label:  "Kills more than 99.99% of Germs" and "prevents disease and reduces illness" | ¶¶ 67–72 PageID #202–03 |

Plaintiffs who sued in New York acquired the following products based on the following representations:

4

| Plaintiff | Product | Relied On | Source (ECF No. 84) |
|---|---|---|---|
| Magdiela Gonzalez | Purell Advanced Hand Sanitizer | "Kills 99.9% of germs" | ¶ 79 PageID #204 |
| Rita Bongiovi | Purell Advanced Hand Sanitizer travel-size pump bottles | Ads: "Kills over 99.99% of germs" | ¶¶ 73–78 PageID #203 |

Although the consolidated amended complaint recites many other alleged misrepresentations, review of Plaintiffs' allegations shows that the others do not relate to the products at issue.

### C.    Bases for Plaintiffs' Claims

According to the consolidated amended complaint, "there is no evidence that Defendant's Product prevents the flu and other viruses or reduces infection from the flu and other viruses." (ECF No. 84, ¶ 36, PageID #195.)  To support this allegation and their claims, Plaintiffs rely on three sets of materials.

### C.1.    FDA Warning Letter

Much of the consolidated amended complaint arises from a warning letter the Food and Drug Administration sent to GOJO on January 17, 2020. (*Id.*, ¶ 37; ECF No. 84-1, PageID #229.)  That warning letter "concerns [GOJO]'s marketing of the PURELL® Healthcare Advanced Hand Sanitizer product line." (ECF No. 84-1, PageID #229.)  Defendant markets this product line for use in athletic facilities, schools, and offices as part of "THE PURELL SOLUTION" and "for use as consumer and healthcare antiseptics." (*Id.*, PageID #230.)

5

Based on claims about Purell, including its efficacy against Ebola, norovirus, and influenza, FDA took the position that Purell Healthcare Advanced Hand Sanitizers, which are formulated with ethyl alcohol, are drugs under the Food, Drug, and Cosmetic Act. (*Id.*, PageID #231.) According to FDA, consumers may purchase individual items from this product line, notwithstanding its intended uses, through Defendant's website. (*Id.*, PageID #232.) In short, and to oversimplify, FDA asserted that it had not approved Purell Healthcare Advanced Hand Sanitizers for sale or marketing as a new drug and that the product line did not fall into a regulatory safe harbor recognizing its ingredients as safe and effective. (*Id.*, PageID #231–33.)

Although the FDA warning letter relates to a different product line marketed for different uses, and no Plaintiff claims to have purchased that product, Plaintiffs seize on FDA's statement that the agency is "currently unaware of any adequate and well-controlled clinical trials in the published literature" to support representations of the sort at issue in the consolidated amended complaint. (ECF No. 84, ¶ 37, PageID #195; ECF No. 84-1, PageID #233.)

### C.2.   GOJO Blog Posts and Statements

Plaintiffs attach to the consolidated amended complaint a series of GOJO blog posts and statements Defendant made on various social media platforms. (ECF No. 84, ¶ 33(f)–(k), PageID #191–93; ECF No. 84-2; ECF No. 84-3.) These posts contain generalized statements about the importance of handwashing and other hygienic measures. (*Id.*) Some promote one of Defendant's surface disinfecting products. (ECF No. 84-3, PageID #258, 261 & 264.) None specifically mentions Purell Advanced Hand Sanitizer in a meaningful way. (ECF No. 84, ¶ 33(f)–(k), PageID

6

#191–93; ECF No. 84-2; ECF No. 84-3.)  Indeed, Purell Advanced Hand Sanitizer is mentioned only twice.  The first merely identifies GOJO as the maker of Purell Advanced Hand Sanitizer.  (ECF No. 84-2, PageID #236.)  The second cites a journal article, which "found that offices equipped with Purell Advanced Hand Sanitizer and Purell Hand Sanitizing Wipes . . . resulted in 24.3 percent fewer healthcare insurance claims for hand hygiene preventable illnesses" and "13.4 percent fewer sick episodes during the study year in the intervention group compared to the previous year."  (ECF No. 84-2, PageID #242.)

### C.3.  Scientific Studies and Articles

Beyond the FDA warning letter and GOJO's statements, Plaintiffs point to various scientific studies and articles questioning the efficacy of hand sanitizers and suggesting they may not be as effective as Defendant claims.  (ECF No. 84, ¶ 43, PageID #196–98.)  Additionally, Plaintiffs appear to allege that Defendant's representations about Purell Advanced Hand Sanitizer are false or misleading because there is no evidence the product "actually prevents infection and reduces illness by killing bacteria and viruses."  (*Id.*, ¶ 39, PageID #195.)

### STATEMENT OF THE CASE

Alleging Defendant knew or should have known it should not make representations about specific pathogens (*id.*, ¶¶ 45–47, PageID #198–99) and that its representations were false or misleading (*id.*, ¶ 51, PageID #200), Plaintiffs claim they would not have purchased Purell Advanced Hand Sanitizer had they but known of Defendant's allegedly deceptive advertising (*id.*, ¶ 84, PageID #204).  Additionally,

Plaintiffs allege they overpaid for Purell Advanced Hand Sanitizer under the false impression that it prevented disease and reduced illness.  (*Id.*, ¶ 83.)

Based on these allegations, Plaintiffs assert eight causes of action.  First, they claim violations of the California Consumers Legal Remedies Act.  (*Id.*, ¶¶ 105–10, PageID #201–11.)  Second, the consolidated amended complaint alleges violations of California's false advertising law.  (*Id.*, ¶¶ 111–22, PageID #211–12.)  Third, Plaintiffs allege violations of California's unfair competition law.  (*Id.*, ¶¶ 123–43, PageID #212–17.)  Fourth, they claim violation of Section 349 of New York's General Business Law.  (*Id.*, ¶¶ 144–55, PageID #218–19.)  Fifth, the consolidated amended complaint also alleges Defendant violated Section 350 of New York's General Business Law.  (*Id.*, ¶¶ 156–66, PageID #219–20.)  Sixth, Plaintiffs assert a claim for negligent misrepresentation.  (*Id.*, ¶¶ 167–73, PageID #221.)  Seventh, they allege intentional misrepresentation.  (*Id.*, ¶¶ 174–84, PageID #221–23.)  Eighth, the consolidated amended complaint alleges unjust enrichment.  (*Id.*, ¶¶ 185–86, PageID #223.)

Plaintiffs also seek to proceed on behalf of two classes:  (1) a California class consisting of all persons who purchased Purell Advanced Hand Sanitizer in California in the previous four years; and (2) a New York class consisting of all persons who purchased the product in New York in the previous four years.  (*Id.*, ¶¶ 93, 94, PageID #206.)

Defendant moves to dismiss the consolidated amended complaint in its entirety under Rule 9(b) and Rule 12(b)(6).  (ECF No. 85.)  Additionally, pursuant to

8

Rule 12(b)(1), Defendant makes a facial challenge to Plaintiffs' standing to maintain their claims.  (*Id.*)  In this case, Plaintiffs cannot show that they suffered an injury in fact under the governing Article III principles.  Therefore, the Court begins and ends its analysis there.

## JURISDICTION

Under Rule 12(b)(1), the standard of review "depends on whether the defendant makes a factual or facial challenge to subject-matter jurisdiction." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 986–87 (S.D. Ohio 2020) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 920, 330 (6th Cir. 2007)).  Unlike a factual attack, which requires the district court to analyze conflicting evidence to determine if jurisdiction exists, a facial attack "challenges the jurisdictional sufficiency of the complaint given those facts." *Id.* at 987 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  "When reviewing a facial attack, a district court takes the allegations in the complaint as true, similar to the approach employed in reviewing a Rule 12(b)(6) motion to dismiss." *Id.* (citation omitted).  Defendant lodges a facial attack here, challenging Plaintiffs' standing by taking their claims at face value and as true, not by challenging their factual predicate.  Therefore, the Court accepts the facts Plaintiffs pleads as true.

Standing presents a "threshold determinant[] of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975).  "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the

putatively illegal conduct of the defendant" and that "the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (cleaned up); *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021).

To establish injury in fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), the Supreme Court explained these requirements in the context of a claim under the Fair Credit Reporting Act. A particularized injury "affect[s] the plaintiff in a personal and individual way." *Id.* at 1548 (quotation omitted). In other words, the plaintiff "must allege personal injury." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Particularization is a necessary but not sufficient requirement for standing. *Id.* An injury must also be concrete, which means it must actually exist. *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). A concrete injury is real and not abstract, but not necessarily tangible. *Id.* (citations omitted). A statutory violation "does not automatically satisf[y] the injury-in-fact requirement." *Id.* at 1549.

Intangible injuries premised on statutory violations may satisfy Article III's injury-in-fact requirement. *Huff v. Telecheck Servs.*, 923 F.3d 458, 464 (6th Cir.2019). But such a claim still requires a concrete injury. *Id.* at 465 (quoting *Spokeo*, 136 S. Ct. 1549) (citations omitted). Although policing the border between claims alleging

10

statutory violations for which a plaintiff has standing and those not alleging concrete harm may prove difficult at times, standing principles require that the alleged violation cause adverse consequences.  *Id.*

## ANALYSIS

At bottom, Plaintiffs bring this putative class action on two theories, each regarding Defendant's marketing that Purell Advanced Hand Sanitizer kills over 99.99% of germs:  (1) but for this allegedly false marketing about the Purell Advanced Hand Sanitizer they purchased, they would have bought some other product; and, alternatively, (2) because of these allegedly false claims about the product, they overpaid for it.  Before analyzing each of these theories of injury under standing principles, the Court briefly addresses three threshold issues.

*First*, the Court reads Defendant's motion to dismiss based on standing as asserting a facial challenge.  Accordingly, the Court takes the core allegations in the consolidated amended complaint—that, notwithstanding the claim Purell Advanced Hand Sanitizer kills over 99.99% of germs, it does not prevent infection or reduce illness from those germs—as true.  Although the Court expects Defendant contests this claim on the merits, in the present procedural posture, the Court takes Plaintiffs' allegations at face value and assumes Plaintiffs can prove them to a jury at trial.

*Second*, Plaintiffs' allegations regarding FDA and Defendant's blog posts, social media marketing, and other alleged statements in the consolidated amended complaint have no relevance to determining whether Plaintiffs suffered an injury under Article III.  (*See* ECF No. 84, ¶ 33(f)–(k), PageID #191–93; ECF No. 84-2; ECF

No. 84-3, PageID #258, 261 & 264.)  None of the blog posts or social media identified in the consolidated amended complaint mentions or involves representations on which Plaintiffs claim to have relied in purchasing Purell Advanced Hand Sanitizer. Instead, these allegations almost exclusively relate to hand sanitizer generally or to Purell Healthcare Advanced Hand Sanitizer, a different product, marketed to different customers, and subject to a different regulatory regime.  No Plaintiff alleges he or she purchased Purell Healthcare Advanced Hand Sanitizer or relied on any statement regarding Purell Healthcare Advanced Hand Sanitizer.  Additionally, the FDA warning letter primarily involves whether Defendant secured FDA approval for marketing Purell Healthcare Advanced Hand Sanitizer as safe and effective, which is not an issue for the consumer products at issue in this litigation.  Although the warning letter does raise the issue of the scientific accuracy of Defendant's claims about hand sanitizer more broadly, as noted, the Court assumes the truth of that allegation and that Plaintiffs can ultimately so prove to a jury.

*Third*, Plaintiffs' allegation that scientific studies and articles call Defendant's marketing into question also has no relevance to determining whether Plaintiffs have standing.  (ECF No. 84, ¶ 43, PageID #196–98.)  No representation at issue involves a claim that the product's efficacy is "backed by science" or anything like that.  Nor does any Plaintiff allege he or she purchased Purell Advanced Hand Sanitizer based on such a representation.

## I.      Standing on Plaintiffs' Theories

Even taking the record in the light most favorable for Plaintiffs, they fail to allege standing under Article III and, in particular, that they suffered a concrete and particularized injury on each of the theories they allege.

### I.A.     The Other-Product Theory

Plaintiffs claim they would not have purchased Purell Advanced Hand Sanitizer had Defendant not marketed it as killing over 99.99% of germs.  Assuming the truth of this allegation, Plaintiffs have not suffered an injury.  They received fair value for what they paid.  They paid for hand sanitizer.  They received hand sanitizer. And they did so in an arm's length transaction.

For purposes of determining whether Plaintiffs sustained an injury, whether the product kills 98% or 99.99% or some other percentage of germs does not matter. Under any set of facts, they received hand sanitizer for which they paid.  No allegation claims that they received snake oil, water, or a product that did not accomplish its intended purpose to some material degree.  Plaintiffs only allege that Purell Advanced Hand Sanitizer may not be as effective as advertised.  But they received the benefit of the bargain and may not transform what would be a contract dispute (if Plaintiffs had a contract with Defendant) into a consumer class action.  Courts regularly conclude that plaintiffs making such allegations lack standing.  *See, e.g.*, *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002);  *Estrada v. Johnson & Johnson*, No. 2:14-cv-01051-TLN-EFB, 2015 WL 1440466, at *4 n.9 (E.D. Cal. Mar. 27, 2015) (collecting cases).

13

Nor did Plaintiffs allege an alternative product they might have purchased instead. Based on the scientific articles and evidence Plaintiffs allege, it is doubtful they could. These omissions and allegations underscore Plaintiffs' lack of an injury on this theory. *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 747 (E.D. Mich. 2017); *Estrada*, 2015 WL 1440466, at *5.

### I.B.    The Overcharge Theory

As for Plaintiffs' theory that they paid too much for Defendant's hand sanitizer based on its allegedly false claims about the product, such allegations *may* confer standing in the right circumstances. *See, e.g.*, *Loreto v. Procter & Gamble, Co.*, 515 F. App'x 576, 581 (6th Cir. 2013). Just not here. Plaintiffs fail to allege any effect on the market price for the product at issue based on the allegedly false and misleading statements on which they base their claims. That is, crediting Plaintiffs' allegations, the consolidated amended complaint lacks factually supported, plausible allegations that any representation at issue resulted in payment of a premium.

Nor do Plaintiffs allege that they incurred out of pocket expenses to replace the hand sanitizer purchased or identify what price they actually would have paid and the market would have supported. *See Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th Cir. 2017). They do not even state any basis by which one might measure the difference between the price paid and a fair market price. By omitting such basic facts, the consolidated amended complaint makes only conclusory claims unsupported by facts and fails to establish Plaintiffs suffered an injury.

14

## II.    Sixth Circuit Authority

Without plausible allegations supporting injury in fact, Plaintiffs' marketing- and consumer-based claims boil down to the concern or fear that the product may not perform as they expected based on the marketing claims at issue.  That is, Plaintiffs bring suit alleging that they paid for a product to kill 99.99% of germs to prevent or reduce illness, but received a product that does less than that.  They seek compensation because they may have a greater exposure to germs than they wanted when they bought Purell Advanced Hand Sanitizer.  Such concern does not amount to an injury that is concrete, particularized, actual, or imminent.  *See, e.g.*, *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1279–82 (C.D. Cal. 2016) (discussing additional authorities).

Attempting to overcome this conclusion, Plaintiffs rely on the Sixth Circuit's decision in *Loreto*, arguing it "is on all fours with this case."  (ECF No. 86, PageID #463.)  There, the defendant marketed two over-the-counter remedies as containing vitamin C, implying health benefits based on conventional wisdom.  Claiming no scientific evidence supported this popular belief or the defendant's marketing, the plaintiffs alleged on behalf of a nationwide class that they would have purchased a lower-priced cold remedy without this allegedly false and misleading marketing. Rejecting the defendant's standing argument, the Sixth Circuit wrote that "Plaintiffs' allegation that they suffered a monetary loss by paying more for a cold remedy because of the company's misrepresentation establishes a cognizable injury."  515 F. App'x at 581.

15

But that reasoning applied to different allegations, which involved the option to purchase an allegedly lower-priced product that did not contain the ingredient at issue.  In contrast, Plaintiffs here do not identify a competitive product.  In fact, as noted, their allegations foreclose such an allegation.  Moreover, the Sixth Circuit acknowledged that the absence of such allegations would lead to a different outcome. *Id.* at 581–82 (distinguishing *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177–78 (D.D.C. 2003)); *see also id.* at 580 n.2.  In any event, as an unpublished opinion, *Loreto* does not constitute binding authority within this Circuit.

Plaintiffs also argue that "courts have repeatedly held that to establish standing plaintiffs need only plead that they would not have purchased the product at issue or would have paid substantially less for it, but for the misleading representations and/or omissions by the defendant."  (ECF No. 86, PageID #463.)  But they cite no authority for this proposition.  To the contrary, what Plaintiffs pitch as a quotable sound bite fails to account for the cases discussed above and the emerging view examining injury in consumer cases that would otherwise arise under product liability laws.  In any event, any case turns on the particular allegations, and here the consolidated amended complaint does not include well pleaded facts establishing that Plaintiffs have suffered an injury within the meaning of Article III.

On that score, Plaintiffs object that they need not come into court at the pleading stage armed with expert analysis quantifying their alleged damages.  (ECF No. 86, PageID #466.)  Fair enough.  At this stage, no one is asking for the type of robust economic analysis Plaintiffs set up as a straw man.  But they have not even

met the low pleading bar of providing facts establishing *some* difference between the price paid and the value received.  Instead they have failed to provide any factual basis for such a claim.

## III.    Standing for Injunctive Relief

Defendant maintains Plaintiffs lack standing to maintain a claim for injunctive relief because the consolidated amended complaint contains no allegation that any Plaintiff will buy the hand sanitizer at issue in the future.  For this argument, Defendant relies on two decisions from this District, holding that "Plaintiffs seeking injunctions must show that they are 'likely to suffer future injury' in order to establish standing."  *Neuman v. L'Oreal USA S/D, Inc.*, 2014 WL 5149288, at *2 (N.D. Ohio Oct. 14, 2014) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).  There, the court pointed out that the Southern District of Ohio, applying California law, recognizes that a plaintiff does not have standing to seek an injunction absent an allegation he plans to purchase the product again.  *Id.* at *2 & n.26 (citing *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 530–32 (S.D. Ohio 2011)). Notwithstanding contrary authorities in other jurisdictions, the *Neuman* Court found the line of cases denying standing where the plaintiff has no plans to purchase the product more persuasive:  "The result that a plaintiff who suffers no risk of future injury cannot obtain an injunction furthers the purpose of the Article III standing inquiry—to ensure that there is a live case or controversy between the parties."  *Id.* More recently, in *Szep v. General Motors LLC*, 491 F. Supp. 3d 280, 290 (N.D. Ohio 2020), the court reached the same conclusion under Article III with respect to a claim for an injunction under the Ohio Consumer Sales Practices Act.

Plaintiffs do not deny the absence of such an allegation.  Instead, they point to a split of authority on this question, on which the Sixth Circuit has yet to speak.  For their part, Plaintiffs rely on *Yeldo v. MusclePharm Corp.*, 290 F. Supp. 3d 702, 713–14 (E.D. Mich. 2017).  There, the court ruled the plaintiff had standing to seek injunctive relief over allegedly misleading marketing for a dietary supplement.  After noting the split of authority within this Circuit, the court considered the competing views and determined those plaintiffs had standing due to "the public policy conundrum" that consumers would otherwise not having standing to seek an injunction in any case because they would not make future purchases of the product based on the claims in their litigation.  *Id.* (citing *Leiner v. Johnson & Johnson Consumer Cos.*, 215 F. Supp. 3d 670, 672 (N.D. Ill. 2016)).

In one respect, the Court agrees with Plaintiffs.  Standing based on allegations of future purchases, or the lack thereof, focuses the analysis on form over substance.  No rational person bringing the types of claims at issue here would voluntarily purchase the product over which she is suing in the future—all the more so here, where Plaintiffs allege they would not have bought Defendant's hand sanitizer at all had they known what they claim is the truth about it.  In this regard, the Court sees the question differently than Defendant frames it.  Instead, because Plaintiffs seek to proceed on theories they lack standing to advance, as discussed above, the question becomes whether Plaintiffs nonetheless have standing to seek injunctive relief.  It is difficult to see how Plaintiffs would have standing to seek an injunction where they lack standing to maintain a no-injury class substituting for product liability claims.

18

Based on the allegations in the complaint, construed in Plaintiffs' favor, the Court cannot identify any allegation of an actual or threatened injury that confers standing.

In any event, upon consideration of the authorities on each side of the split of authority within this Circuit, the Court determines that the position of the Northern District of Ohio and the Southern District of Ohio presents the better reasoned view. On other facts, this conclusion would not foreclose all relief. Indeed, where the plaintiffs have standing, they may maintain claims for damages (which often foreclose claims for injunctive relief). Additionally, State attorneys general, increasingly active in litigation, have an important role in enforcement, as do governmental agencies. Accordingly, the Court cannot agree with Plaintiffs or the authorities on which they rely that public policy considerations weigh in favor of standing. To so hold, in the Court's view, would require interpreting or applying Article III principles differently in the context of alleged future harm—a view without support in the law.

## IV.  Leave to Amend

At the conclusion of their brief, Plaintiffs request leave to amend "[i]f the Court concludes that any of Plaintiffs' allegations are deficient." (ECF No. 86, PageID #495.) Plaintiffs do not attach a proposed amendment or otherwise indicate what allegations they might seek to amend. Although Rule 15 generally directs a court to give leave to amend freely, Fed. R. Civ. P. 15(a)(2), perfunctory amendment requests at the end of a brief are inadequate. *See Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 305 (6th Cir. 2011); *see also Alexander v. Eagle Mfg. Co.*, 714 F. App'x 504, 511 (6th Cir. 2017) ("[A] request for leave to amend, almost as an aside,

to the district court in a memorandum in opposition to the defendants motion to dismiss is not a motion to amend.") (cleaned up).  In any event, based on the totality of the record, which includes numerous prior pleadings before the consolidated amended complaint, the length of time the case has already been pending, and the failure to identify any allegations Plaintiffs would seek to amend (in compliance with the Court's Civil Standing Order or otherwise), the Court declines to exercise its discretion to allow amendment, which would have the effect of rendering this decision advisory.

## CONCLUSION

For all the foregoing reasons, Plaintiffs fail to allege an injury cognizable under Article III.  Therefore, the Court lacks jurisdiction and **DISMISSES** the consolidated amended complaint.

**SO ORDERED.**

Dated:  May 11, 2021

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio